IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Vernon Wilcox, ) | Civil Action No. 9:14-3747-RMG |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| South Carolina Department of ) | |
| Corrections, Nurse Brooks, Cynthia ) | |
| Connell, S. Page, D. Copeland, Captain ) | |
| Siebles, Major Washington, Sharonda ) | |
| Sutton, and Robert M. Stevenson, III, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on the Report and Recommendation (R & R) of the Magistrate Judge, (Dkt. No. 59), recommending this Court grant Defendants' motions for summary judgment for failure of the Plaintiff to exhaust his administrative remedies. (Dkt. Nos. 50; 53) Plaintiff filed a timely objection. (Dkt. No. 61.) As explained herein, the Court ADOPTS portions of the R&R as modified and GRANTS Defendants' motions for summary judgment.

## I.     BACKGROUND

Plaintiff, a former inmate of Broad River Correctional Institution ("BRCI"), filed this civil action *pro se* on September 23, 2014. (Dkt. No. 1.) Plaintiff alleges claims for deliberate indifference and violations of due process under 42 U.S.C. § 1983 arising out of events that occurred during his incarceration at BRCI. (*Id.* at 12–13.) Plaintiff alleges that because of his HIV status, he was housed in the Wateree dorm, which was one of the two dorms used to house HIV positive inmates at that time. (*Id.* at 8.) Subsequently, in February 2013, the Wateree dorm inmates, including Plaintiff, were relocated to the Monticello dorm. (*Id.*) Plaintiff alleges that

1

on January 3, 2014, all of the Monticello dorm inmates were placed on lockdown "due to a number of the inmates being infected with a sexually transmitted infection ("STI")." (*Id.*) According to Plaintiff, on January 13, 2014, Defendant Copeland, a lieutenant, announced that every inmate in the dorm would have to be treated for this STI, and that any inmate who refused treatment would be placed in quarantine. (*Id.*)

Defendant Washington explains in his affidavit that this treatment arose after "an outbreak of gonorrhea in the Monticello Unit." (Dkt. No. 50-7 at 2.) Defendant Sutton avers that the employees and staff at BRCI "attempted to narrow down the potential source of the infection; however, despite treatment of the gonorrhea-positive inmates in the unit, more cases of gonorrhea continued to be diagnosed in other inmates." (Dkt. No. 50-9 at 2.) The South Carolina Department of Corrections ("SCDC") then made the administrative decision "that the most prudent way to control and eliminate the further spread of the gonorrhea infection was to treat all of the inmates within the HIV unit with antibiotics to avoid an imminent threat of infection to these already immune-compromised inmates." (*Id.*)

Plaintiff alleges that the treatment was "forced" upon him, with Defendant Brooks "forcefully us[ing] a hypodermic needle to inject medication into Plaintiff's body against his will." (*Id.*) Plaintiff further alleges that Defendant Connell "forcefully administered [] four pills to Plaintiff against his will." (*Id.* at 8–9.) Plaintiff alleges that Defendants Page, Copeland, Seibles, Washington, Sutton and Stevenson witnessed this conduct and did not intervene. (*Id.* at 9.)

According to Plaintiff, he has never engaged in sexual behavior during his incarceration, and none of the inmates who tested positive for the STI named Plaintiff as a sexual partner. (*Id.*) Plaintiff alleges that he was not tested for this STI prior to receiving the treatment, and that

Defendants "had no valid reason to forcefully medicate Plaintiff against his will." (*Id.*) Plaintiff alleges that he has suffered "emotional injuries"—specifically, he "feels humiliated and embarrassed" and "does not feel safe, physically, in his person." (*Id.* at 10–12.) He seeks injunctive[1] and monetary relief.

Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e) DSC, this matter was automatically referred to a United States Magistrate Judge. Defendants Copeland, Page, Siebles, SCDC, Stevenson, Sutton, and Washington filed a motion for summary judgment on August 25, 2015 (Dkt. No. 50), and Defendant Connell filed a motion for summary judgment on September 1, 2015 (Dkt. No. 53). Plaintiff filed a memorandum in opposition on October 7, 2015. (Dkt. No. 56.) Defendant Connell filed a reply memorandum on October 19, 2015. (Dkt. No. 57.) On October 27, 2015, the Magistrate Judge issued the present R & R recommending the Court grant Defendants' motions for summary judgment for the failure of Plaintiff to exhaust his administrative remedies. (Dkt. No. 59.) Plaintiff then filed timely objections to the R & R. (Dkt. No. 61.)

## II. Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71, 96 S. Ct. 549, 46 L.Ed.2d 483 (1976). Thus, this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

---

[1] The Court notes that, because Plaintiff is no longer incarcerated at BRCI [*See* Dkt. No. 61-1 indicating Plaintiff is an inmate at MacDougall Correctional Institution ], his claim for injunctive relief is moot. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot).

3

Defendants move for summary judgment. Summary judgment is appropriate if a party "shows there is no genuine dispute as to any issue of material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under the framework established in *Celotex Corporation v. Catrett*, the party seeking summary judgment shoulders the initial burden of demonstrating to the Court that there is no genuine issue of material fact. 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party makes this threshold demonstration, then the non-moving party must, in order to survive summary judgment, demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Notably, "[i]n this Circuit, verified complaints by *pro se* prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge." *Pendergrass v. United States*, No. 0:11–cv–2706, 2013 WL 518842, at *1 n.3 (D.S.C. Feb.12, 2013) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

In reviewing these pleadings, the Court is mindful of Plaintiff's *pro se* status. This Court is charged with liberally construing the pleadings of a pro se litigant. *See, e.g., De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The requirement of a liberal construction does not mean, however, that the Court can ignore a pro se plaintiff's clear failure to allege facts that set forth a cognizable claim, or that a court must assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

### III. Discussion

#### A. Fourteenth Amendment Claim

Plaintiff first alleges that Defendants violated his substantive due process rights under the Fourteenth Amendment. (Dkt. No. 1 at 11.) "The right to be free of unwanted physical

4

invasions has been recognized as an integral part of the individual's constitutional freedoms. . . ." *United States v. Charters*, 829 F.2d 479, 491 (4th Cir. 1987), *vacated on other grounds*, 863 F.2d 302 (4th Cir. 1988). Moreover, "[t]he right to refuse medical treatment has been specifically recognized as a subject of constitutional protection," *id.*, that survives criminal conviction and incarceration, *cf. Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (recognizing liberty from bodily restraint, as protected by the Due Process Clause from arbitrary governmental action, survives criminal conviction and incarceration). Thus, "[i]f an individual is competent to make medical decisions, the individual's informed decision presumptively is the best decision for that individual . . . ." *Charters*, 829 F.2d at 494-95; *see also Washington v. Harper*, 494 U.S. 210, 221-22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (recognizing an individual's "significant liberty interest in avoiding the unwanted administration" of a specific form of medical treatment).

Although the right of a prisoner to be free from unwanted medical treatment is protected under the Fourteenth Amendment, there are instances where a state's interest in providing a safe and secure prison environment outweigh the liberty interests of an individual. *See Harper*, 494 U.S. at 223. Courts have balanced these interests in favor of the government in instances where the inmate's refusal of treatment could impact the health of other inmates and prison personnel. *See Harper*, 494 U.S. at 220 (inmate forced to take antipsychotic drugs for the safety of himself and those around him); *Davis v. Anibal*, 89 Fed. App'x. 523 (6th Cir. 2004) (bleeding prisoner forced to have his head stitched shut to preserve his own life and to protect those around him); *McCormick v. Stalder*, 105 F.3d 1059 (5th Cir. 1997) (inmate forced to undergo treatment for tuberculosis); *Russell v. Richards*, 384 F.3d 444, 449 (7th Cir. 2004) (prisoners forced to use delousing shampoo to prevent infestation among all inmates). Indeed, the Tenth Circuit has

noted that a "prison's interest in responding to the threat of . . . any contagious disease occurring in prison, is obviously strong." *Dunn v. White*, 880 F.2d 1188, 1195 (10th Cir. 1989).

"[T]he proper standard for determining the validity of a prison regulation claimed to infringe on an inmate's constitutional rights is to ask whether the regulation is 'reasonably related to legitimate penological interests.'" *Harper*, 494 U.S. at 223 (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The fit between the jail's legitimate interests and its policy need not be perfect in order to survive scrutiny, it need only be rational. *Waterman v. Farmer*, 183 F.3d 208, 215 (3d Cir.1999); *see also Turner*, 482 U.S. 78, 89–90 ("[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational.").

Here, the SCDC made the decision to administer treatment for gonorrhea in an effort to prevent the spread of this contagious disease after an outbreak occurred. According to Defendant Sutton's affidavit, the prison officials first limited treatment to those who had tested positive for the disease. (Dkt. No. 50-9 at 2.) However, as more cases of gonorrhea continued to be diagnosed, the prison decided "the most prudent way to control and eliminate the further spread" of this disease was to treat all of the inmates in the Monticello dorm. (*Id.*) The prisoners who did not want to receive treatment were given the option of being quarantined instead. (*Id.*) In light of the prison officials' legitimate concerns about the "imminent threat of infection to these already immune-compromised inmates," (*id.*), the Court finds that requiring the inmates be treated for gonorrhea was reasonably related to the prison's legitimate medical and penological

6

objectives. Accordingly, Plaintiff has failed to establish a violation under the Fourteenth Amendment.[2]

### B. Eighth Amendment Claim

Plaintiff also alleges that Defendants' conduct amounts to deliberate indifference to serious medical needs in violation of the Eighth Amendment. (Dkt. No. 1 at 11.) Deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). To establish deliberate indifference, an inmate must allege both that he experienced a deprivation that was "objectively sufficiently serious" and "that subjectively the officials acted with a sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks, alteration, and emphasis omitted).

Negligence or medical malpractice will not establish a sufficiently culpable state of mind. *Id.*; *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Instead, a constitutional violation does not occur unless the medical provider's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

---

[2] The Court also liberally construes the Complaint to allege an equal protection violation under the Fourteenth Amendment. (Dkt. No. 1 at 13.) However, for the above reasons, the Court finds that the prison's decision to treat HIV-positive inmates for gonorrhea was rational based on its legitimate concerns about the "imminent threat of infection to these already immune-compromised inmates." (Dkt. No. 50-9 at 2.) Accordingly, this claim also fails as a matter of law. *See Verderamo v. Mayor & City Council of Baltimore*, 4 F. Supp. 3d 722, 733–34 (D. Md. 2014) ("Under rational-basis review, a governmental classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" (quoting *F.C.C. v. Beach Comm., Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.E.2d 211 (1993)).

7

In the Complaint, Plaintiff acknowledges that he had the option to be quarantined as an alternative to receiving the gonorrhea treatment. (Dkt. No. 1 at 8.) Apparently, Plaintiff elected not to be quarantined and was "forcefully" treated for gonorrhea. (*Id.*) Plaintiff asserts that "Defendants Stevenson, Sutton, Washington, Seibles, Copeland, and Page were indifferent for failing to stop th[e] unwarranted [gonorrhea] treatment," and "Defendants Connell and Brooks were indifferent for administering this unwarranted and unwanted medication." (Dkt. No. 56 at 16.) Notably, Plaintiff does not allege that he suffered any physical harm as a result of Defendants' conduct. Rather, he asserts that he has been "humiliated and embarrassed due to the actions of the Defendants." (Dkt. No. 1 at 10.)

Even if Plaintiff's allegations are true, he has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Additionally, he has not shown that any conduct by the Defendants "shocks the conscience" as required by *Milter v. Beorn*. Accordingly, even when viewed in the light most favorable to Plaintiff, the record creates no genuine issue of material fact to support his deliberate indifference claim.

## Conclusion

The Court finds that Plaintiff has failed to establish any genuine issues of material fact as to his constitutional claims under 42 U.S.C. § 1983. Having disposed of the motions for summary judgment on this ground, the Court does not reach the issue of whether Plaintiff failed to exhaust his administrative remedies. Accordingly, the Court **ADOPTS** the portions of the R&R granting Defendants' motions and **GRANTS** Defendants' Motions for Summary Judgment (Dkt. Nos. 50; 53).

**IT IS SO ORDERED.**

8

_____
Richard M. Gergel
United States District Judge

November 20, 2015
Charleston, South Carolina

9